UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-22907-BLOOM/Otazo-Reyes

RANGAN BANDYOPADHYAY,

    Plaintiff,

v.

DEFENDANT 1, *also known as* Suxia Obei, *also known as* Sasha, and JOHN DOES 1-20,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR FINAL DEFAULT JUDGMENT

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Entry of Final Default Judgment, ECF No. [22] ("Motion"), against Defendant "1" a/k/a SUXIA OBEI a/k/a SASHA ("Defendant"). The Court has carefully reviewed the Motion, the record, and is otherwise fully advised.

**I.   BACKGROUND**

On September 13, 2022, Plaintiff filed a Complaint against Defendant RANGAN BANDYOPADHYAY and others alleging a violation of 18 U.S.C. §§ 1961-68 of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count I); Conversion (Count II); Unjust Enrichment (Count III); Disgorgement of Funds (Count IV); and Conspiracy (Count V). ECF No. [1].[1] Plaintiff alleges Defendants stole 957,281.50 units of the cryptocurrency Tether ("USDT") from Plaintiff pursuant to a sophisticated global internet cryptocurrency fraud and conversion

---

[1] Because Plaintiff does not move for final judgment on Count V, *see* ECF Nos. [22] and [22-3], the Court does not consider Count V.

scheme. Pl.'s Decl., ECF No. [22-1] ¶¶ 3-4.[2] Pursuant to that scheme, Defendant continually contacted Plaintiff via electronic means, induced him to interact with a fraudulent electronic platform, impersonated Plaintiff's legitimate cryptocurrency exchange (Coinbase) to misdirect and thwart Plaintiff's inquiries, and converted Plaintiff's cryptocurrency from his Coinbase account. ECF No. [1] ¶¶ 11-21, 23-24, 27. The Complaint alleges that Defendant maintains, and continues to maintain, private cryptocurrency wallets and cryptocurrency exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits. *Id.* ¶ 9. Plaintiff tracked the stolen cryptocurrency to the identified virtual wallets at the Binance Exchange Pool. *Id.* ¶¶ 22-28; *see also* Decl. of Pl.'s Investigator Rodrigo M. Barbara, ECF No. [12-2] ¶ 7.

On January 12, 2023, Plaintiff filed his Motion for Clerk's Entry of Default as to Defendant, ECF No. [17], and the Clerk entered a default for failure to plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. [18]. Plaintiff now moves the Court to grant final default judgment against Defendant.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular

---

[2] *See* U.S. OFF. OF GOV'T ETHICS, LA-22-05, FINANCIAL DISCLOSURE REPORTING CONSIDERATIONS FOR COLLECTIBLE NON-FUNGIBLE TOKENS AND FRACTIONALIZED NON-FUNGIBLE TOKENS (2022) N.4 ("Cryptocurrency is a digital asset, which may be a medium of exchange, for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography, such as a blockchain.") (internal quotation marks and citation omitted).

relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the Complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) ("following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

**III.   ANALYSIS**

    **A.   Default Final Judgment**

Plaintiff moves for entry of final default judgment against Defendant on four claims: RICO in violation of 18 U.S.C. §§ 1961-68 (Count I), Conversion (Count II), Unjust Enrichment (Count III), and Imposition of a Constructive Trust and Disgorgement of Funds (Count IV). The Court considers each claim in turn.

    **1.   RICO in Violation of 18 U.S.C. §§ 1961-68 (Count I)**

A plaintiff asserting a RICO claim must establish: "(1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) causation." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to "conduct, or participate in the

3

conduct of, the affairs of such an enterprise through a pattern of racketeering activity." *Avirgan v. Hull*, 932 F.2d 1572, 1578 (11th Cir. 1991). To recover under § 1962(c), a plaintiff must establish that a defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation marks omitted).

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020).

Here, the Complaint alleges that Defendant maintained, and continues to maintain, private cryptocurrency wallets and cryptocurrency exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits. *Id.* ¶ 9. In addition, Defendant connected with Plaintiff on or about December 8, 2021 through WhatsApp, a messaging application that uses the internet to send messages. *Id.* ¶ 11. After January 25, 2022, when Plaintiff received information on scams perpetrated on cryptocurrency account holders, individuals associated with the liquidity mining platform defi.ethereumt.vip ("DEFIEVIP") communicated with Plaintiff to assure him there was no fraudulent activity on his Coinbase account. *Id.* ¶¶ 16, 20.[3] Those two sets of

---

[3] The Complaint alleges that liquidity mining platforms are computer software that use the software user's "computing power to process 'mine' cryptocurrency." ECF No. [1] ¶ 16. "In exchange, the user receives monetary reward in the form of digital currency." *Id.* "In cryptocurrency liquidity mining, the user earns rewards by letting a decentralized trading service work with some of the user's cryptocurrency tokens." *Id.* "These tokens then facilitate trades between other cryptocurrency holders." *Id.*

4

communication may constitute independent chargeable instances of mail or wire fraud. However, such instances "cannot constitute a 'pattern of racketeering activity' when they arise from a single transaction." *Cisneros*, 972 F.3d at 1216. "Because each use of the mails or wires in furtherance of a single instance of fraud is independently indictable under the federal mail and wire fraud statutes, to hold otherwise could make RICO cases out of one allegedly fraudulent transaction." *Id.* (citation omitted).

Accordingly, Plaintiff's multiple instances of deception do not suffice to show a "pattern of racketeering activity" because they were all "in furtherance of a single instance of fraud," that is, the Defendant's efforts to deprive Plaintiff of 957,281.50 USDT. Plaintiff asserts that Defendant maintained and continues to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all or a portion of Plaintiff's stolen cryptocurrency currently sits, ECF No. [1] ¶ 9, Defendants "will continue their fraudulent international criminal crypto theft scheme robbing unsuspecting persons and businesses in the U.S., in this district, and throughout the world," *id.* ¶ 30, and that Defendants "engaged in a pattern of racketeering activity," *id.* ¶ 37. Those conclusory assertions are insufficient to state a claim upon which relief may be granted. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("The complaint's allegations must establish more than a sheer possibility that a defendant has acted unlawfully. Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." (cleaned up)). Thus, Plaintiff has not sufficiently alleged that Defendants were engaged in "criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*,

473 U.S. 479, 497 n. 14 (1985) (explaining that "while two acts are necessary, they may not be sufficient. Indeed, in common parlance, two of anything do not generally form a 'pattern.'").

Accordingly, Defendant is not liable under RICO.

### 2. Conversion (Count II)

As an initial matter, the Court determines which law applies to Count II. A federal district court exercising supplemental jurisdiction over state law claims applies the choice-of-law rules of the state in which it sits, in this case Florida. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (citing *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." (citations omitted)); *Future Metals LLC v. Ruggiero*, No. 21-CIV-60114, 2021 WL 5853896, at *16 (S.D. Fla. Oct. 26, 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)), *report and recommendation adopted*, No. 21-CV-60114-RAR, 2021 WL 5834258 (S.D. Fla. Dec. 8, 2021). The Eleventh Circuit has explained that, at least as to tort claims, the Florida Supreme Court applies the "most significant relationship" test set forth in Section 145 of the Restatement (Second) of Conflict of Laws ("the Restatement"). *Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996). Under the "most significant relationship" test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Trumpet Vine*, 92 F.3d at 1116 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). Section 6 of the Restatement provides that

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectations,
>     (e) the basic policies underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Under Section 145 of the Restatement, the "[c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered," and "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145 (1971).

    The State of Washington has the most significant relationship to the occurrence and the parties because Plaintiff suffered substantial damages and is a resident and citizen of the State of Washington, ECF No. [1] ¶¶ 6, 29. Moreover, Defendants direct business activities toward and conduct business with consumers throughout the United States, including the State of Washington, *id.* 10. Accordingly, the law of the State of Washington applies to Plaintiff's conversion claim.

    The elements of conversion under the law of the State of Washington are: (1) willful interference with chattel belonging to the plaintiff, (2) a taking or unlawful retention, and (3) a deprivation of possession by the owner. *Burton v. Spokane*, 16 Wash. App. 2d 769, 772 (2021). "The foundation for the action of conversion rests . . . . upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Judkins v. Sadler-Mac Neil*, 61 Wash. 2d 1, 4 (1962) (quoting *Fisher v. Pickwick Hotel*,

7

*Inc.*, 42 Cal. App. 2d 823, 826 (1940)). The Court addresses each element of Plaintiff's Conversion claim in turn.

First, the Complaint alleges that, on January 25, 2022, Plaintiff unsuccessfully attempted to withdraw cryptocurrency and/or lock his Coinbase wallet after linking his Coinbase wallet to the DEFIEVIP platform. ECF No. [1] ¶ 19-20. That allegation supports the inference that Plaintiff was misled into giving control of his Coinbase wallet to Defendants, who operate the DEFIEVIP platform, and who used that control to prevent Plaintiff from accessing or locking the cryptocurrency in his wallet. On January 26, 2022, Plaintiff's Coinbase wallet sent an unauthorized cryptocurrency transaction to a virtual wallet controlled by Defendant. ECF No. [1] ¶ 23. That allegation establishes that the cryptocurrency belonged to Plaintiff because the cryptocurrency was located in Plaintiff's Coinbase wallet. That allegation also establishes that Defendant interfered without warrant with Plaintiff's dominion over the cryptocurrency in his Coinbase wallet by preventing Plaintiff from accessing his Coinbase wallet and by depriving Plaintiff of possession of the cryptocurrency therein.

The Court now considers whether cryptocurrency, as defined in the Complaint, is "chattel" for purposes of a conversion claim under the law of the State of Washington. Few courts, let alone state courts in Washington, have considered whether cryptocurrency is "chattel" for the purposes of a conversion claim. *Zaftr Inc. v. Lawrence*, No. CV 21-2177, 2021 WL 4989769, at *5 (E.D. Pa. Oct. 27, 2021). As such, this Court treads carefully in determining whether cryptocurrency is "chattel."

For the purposes of the law of the State of Washington, "chattel" includes both tangible and "intangible goods." *Lang v. Hougan*, 136 Wash. App. 708, 718 (2007), *as amended on denial of reconsideration* (June 19, 2007). A "good" is "[s]omething with the utility of fulfilling an

...
...

economic need." GOOD, Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary defines "intangible" as "[n]ot capable of being touched; impalpable; incorporeal." INTANGIBLE, Black's Law Dictionary (11th ed. 2019). Together, an intangible good is something with the utility of fulfilling an economic need that is not capable of being touched, impalpable, or is incorporeal. And, according to the U.S. Office of Ethics, "[c]ryptocurrency is a digital asset, which may be a medium of exchange, for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography, such as a blockchain." Note 1, *supra*.[4] Cryptocurrency, as a digital asset, is not capable of being touched, and as a medium of exchange, has the utility of fulfilling an economic need. Accordingly, cryptocurrency is an intangible good, qualifying it as chattel for the purposes of Plaintiff's state law conversion claim.

The Complaint's allegations thus show that the first element of conversion is met.

Second, the Complaint alleges that the transfer was unauthorized and led to further transfers of the cryptocurrency to other virtual wallets. ECF No. [1] ¶¶ 25-27. As such, Defendant's unlawfully retained Plaintiff's cryptocurrency.

Third, as the foregoing shows, the owner was deprived of his cryptocurrency when cryptocurrency was transferred out of his Coinbase wallet on January 26, 2022. Thus, the Complaint states a claim for conversion under the law of the State of Washington. *See Judkins v. Sadler-Mac Neil*, 61 Wash. 2d at 4 (affirming verdict in favor of plaintiff for conversion of $1,400 in cash where defendants' employees prevented plaintiff from recovering money that belonged to

---

[4] The Complaint does not define "cryptocurrency" but cites to the U.S. Office of Ethics to define "stablecoins," which are a subset of cryptocurrency. This being the case, the Court construes the Complaint as incorporating this definition of cryptocurrency by reference.

him that he left in a pickup truck after the plaintiff had transferred the title to the pickup truck to the defendants).

Accordingly, the allegations of the Complaint, accepted as true, establish that Defendant is liable for conversion.

### 3. Unjust Enrichment (Count III)

Plaintiff seeks relief under a theory of unjust enrichment. The law of Washington applies to Plaintiff's Count III for Unjust Enrichment. III.A.2, *supra*. Unjust enrichment is a form of equitable relief. *See Young v. Young*, 164 Wash. 2d 477, 486 (2008) ("we must determine [the defendant's] obligation under . . . the equitable theory of unjust enrichment."). Under the law of Washington, equitable relief is available only if there is no adequate remedy at law. *Orwick v. Seattle*, 103 Wash. 2d 249, 252 (1984). A party claiming unjust enrichment must prove three elements: (1) the defendant received a benefit, (2) the benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. *Young v. Young*, 164 Wash. 2d 477, 485 (2008).

Here, Plaintiff seeks damages for the value of 957,281.50 USDT that was lost when Defendant effectuated an unauthorized transaction from Plaintiff's Coinbase wallet to a virtual wallet with a wallet address associated with Defendant. Plaintiff alleges no other harms in the Complaint; nor does he allege his injury cannot be compensated by money damages, that damages cannot be ascertained with any degree of certainty, or that the injury is of a continuing nature. Monetary damages would compensate Plaintiff for his loss, which is reducible to a monetary value in U.S. dollars. Accordingly, Plaintiff has an adequate remedy at law, so equitable relief is unavailable in this action. *See Kucera v. State, Dep't of Transp.*, 140 Wash. 2d 200, 210 (2000) (explaining that plaintiffs were not entitled to injunctive relief when money damages were an adequate remedy).

As such, Plaintiff is not entitled to recovery under a theory of unjust enrichment.

### 4. Constructive Trust (Count IV)

The law Washington applies to Plaintiff's Count IV claim for the Imposition of a Constructive Trust for the reasons stated in the Court's discussion of Plaintiff's unjust enrichment claim. Under law of the State of Washington, "[a] constructive trust is an equitable remedy that compels restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which, in equity and good conscience, he should not be permitted to hold." *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wash. App. 80, 86-87 (2001). A constructive trust may be imposed when "clear, cogent, and convincing evidence shows that a person holding title to property would be unjustly enriched if he did not convey it to the plaintiff." *Kunkle v. W. Wireless Corp.*, 133 Wash. App. 1023 (2006). "[F]raud, misrepresentation, bad faith, or overreaching" are grounds for imposing a constructive trust. *Baker v. Leonard*, 120 Wash. 2d 538, 547 (1993).

Here, Defendant has an adequate remedy in the form of money damages. As such, the equitable remedy of constructive trust is unavailable.[5]

---

[5] Plaintiff also seeks disgorgement of the converted funds. ECF No. [22] at 9-10. State courts in the State of Washington consider ordering disgorgement where there has been a breach of a fiduciary duty. *See Eriks v. Denver*, 118 Wash. 2d 451, 462 (1992) (explaining that a breach of legal ethical duties may result in disgorgement of attorney's fees); *see also id.* (quoting *In re Eastern Sugar Antitrust Litig.,* 697 F.2d 524, 533 (3rd Cir.1982)) (explaining that disgorgement of fees is a reasonable way to "discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type."). The Court finds no legal authority recognizing the availability of disgorgement of funds absent a violation of a fiduciary duty. As such, the Court declines to expand the scope of the remedy sought. *See Bertelsen v. Harris,* 537 F.3d 1047, 1057 (9th Cir. 2008) (recognizing that the trial court has discretion to order disgorgement of fees for breaches of fiduciary duty).

B.     **Plaintiff's Requested Relief**

1. **Damages**

"If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages." *Ordonez v. Icon Sky Holdings LLC*, 10-60156-CIV, 2011 WL 3843890, at *5 (S.D. Fla. Aug. 30, 2011). "Where all the essential evidence is on record, an evidentiary hearing on damages is not required." *Id.* (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

As set forth in Plaintiff's Declaration, Defendant converted 957,281.50 USDT from Plaintiff. Pl.'s Decl., ECF No. [22-1] at ¶ 4; ECF No. [1] ¶ 24. According to Plaintiff, the term "USDT" or "Tether (USDT)" refers to an asset-backed cryptocurrency or "stablecoin" pegged (or tethered) to the U.S. Dollar. ECF No. [22-3] at 5-6. Stablecoins are a category of cryptocurrencies with mechanisms that are aimed at maintaining a stable value, such as by pegging the value of the coin to a specific currency, asset, or pool of assets or by algorithmically controlling supply in response to changes in demand in order to stabilize value.[6]

Plaintiff seeks $957,281.50 on the grounds that Tether is pegged to the U.S. dollar at a 1 to 1 ratio, the value of the cryptocurrency at the time of the January 26, 2022 unauthorized transfer and as of the date of the Motion are the same, and that Plaintiff lost 957,281.50 USDT on January 26, 2022. ECF No. [22] at 10. However, neither the Complaint nor Plaintiff's damages affidavit allege the value of Tether in U.S. dollars, whether at the time of the unauthorized transaction or at the time of the Motion. As such, essential evidence is missing

---

[6] FINANCIAL DISCLOSURE REPORTING CONSIDERATIONS FOR COLLECTIBLE NON-FUNGIBLE TOKENS AND FRACTIONALIZED NON-FUNGIBLE TOKENS, *supra* note 1 at 1 n.4.

from the record. Therefore, Plaintiff has not met his burden on the appropriate measure of damages.[7]

### 2. Permanent Injunction and Imposition of a Constructive Trust

Plaintiff seeks a permanent injunction against Defendant under RICO. ECF No. [22] at 11-12. Because the Court does not find that Defendant is liable under RICO, Plaintiff's request for a permanent injunction on this ground is denied.

Plaintiff also seeks a permanent injunction on grounds of public policy. *Id.* at 12 n.5 (citing *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291). The Court turns to this argument.

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *Weiss Ratings, LLC v. Individuals, Bus. Entities, & Unincorporated Ass'ns.*, No. 22-CV-23242, 2023 WL 185492, at *4 (S.D. Fla. Jan. 13, 2023) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

As the Court explained in its discussion on Plaintiff's equitable claims, Plaintiff has an adequate remedy at law in this case. As such, a permanent injunction is unwarranted. The Court thus declines to grant Plaintiff's request for injunctive relief.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [22]**, is **GRANTED IN PART**. The Motion is granted as to liability.

---

[7] The Court observes that Plaintiff seeks treble damages under 18 U.S.C. § 1964(c) for Count I. Because the Court does not find that Defendant is liable under RICO, Plaintiff is not entitled to treble damages.

2. Plaintiff shall file evidence of the monetary value of Tether in U.S. dollars by no later than **March 7, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 28, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record